65 F.3d 1314
 103 Ed. Law Rep. 599
 Paul E. THOMSON, M.D., Plaintiff-Appellant,
v.
Judith A.K. HARMONY, Andrew T. Filak, Jr., M.D., Evelyn V.
Hess, M.D., Gene Conway, M.D., John Hutton, M.D.,
Joseph Broderick, M.D., Kathleen
Robbins, and Donald Ebersold,
M.D., Defendants-Appellees.
 No. 93-4089.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 1, 1994.
Decided Sept. 18, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Nov.
1, 1995.*
 
 Ivan L. Tamarkin (argued and briefed), Katz, Greenberger & Norton, Cincinnati, OH, for plaintiff-appellant.
 Mark J. Wasserman (argued and briefed), Richard S. Barnett, Beckman, Weil, Shepardson & Faller, Cincinnati, OH, for defendants-appellees.
 Before: MERRITT, Chief Judge; and KEITH and BOGGS, Circuit Judges.
 BOGGS, J., delivered the opinion of the court, in which KEITH, J., joined. MERRITT, C.J. (pp. 1321-22), delivered a separate dissenting opinion.
 BOGGS, Circuit Judge.
 
 
 1
 Plaintiff Paul Thomson appeals from the district court's dismissal of his suit pursuant to Leaman v. Ohio Dept. of Mental Retardation and Development Disabilities, 825 F.2d 946 (6th Cir.1987) (en banc ), cert. denied, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 882 (1988). For the reasons below, we affirm in part and reverse in part the decision of the district court.
 
 
 2
 * In July 1989, Thomson began a clinical fellowship in the Division of Immunology at the University of Cincinnati College of Medicine, where all of the defendants are employed in various capacities. Thomson took the position at the hospital in order to pursue a career in academic medicine, and he conducted research in rheumatology in Dr. Harmony's laboratory. Thomson and Dr. Harmony had a falling out, which escalated to the point that Thomson was ultimately expelled from the lab, jeopardizing his application for a National Institutes of Health ("NIH") research fellowship and damaging his career prospects. Thomson alleges he was denied the procedural safeguards and hearings guaranteed in the Hospital's policy manual, and that several of the defendants drove him out of his position at another hospital.
 
 
 3
 On December 2, 1991, Thomson sued the eight defendants under 42 U.S.C. Sec. 1983 in federal court. He asserted that the defendants had deprived him of property and liberty interests without due process of law, and he also raised several state law causes of action. The defendants answered and moved on February 14, 1992, for partial dismissal and/or partial judgment on the pleadings.
 
 
 4
 In an order dated June 8, 1992, the district court dismissed Thomson's state law claims against the defendants in their official capacities, holding that those claims were barred by the Eleventh Amendment. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Thomson's state law claims against the defendants in their individual capacities were also dismissed, because Ohio gives state employees immunity unless the Court of Claims finds they fall under one of four statutory exceptions. Ohio Rev.Code Sec. 9.86 (Baldwin 1994). However, the district court permitted Thomson's Sec. 1983 claims for prospective injunctive relief against the state to proceed, finding that his allegations fit within the exception to Eleventh Amendment immunity established in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
 
 
 5
 With the district court's permission, Thomson filed an amended complaint on May 17, 1993, which added allegations that the defendants, in their official and individual capacities, violated his First Amendment rights by their actions in response to statements he made to Dr. Harmony and by continuing to hinder his employment. Thomson sought monetary relief (compensatory damages, attorney's fees and punitive damages) against the defendants in their individual and personal capacities, as well as prospective relief[1] from them in their official capacities. The defendants filed an answer to the amended complaint.
 
 
 6
 On June 3, 1993, Thomson filed an action in the Ohio Court of Claims. This action did not allege violations of the First Amendment or of Sec. 1983, but raised only the state law claims (breach of contract, defamation, promissory estoppel, interference with advantageous contractual relationship, and breach of promise) that the district court had previously dismissed in its June 8, 1992, ruling. Thus, Thomson sued, in their official capacities, seven of the same eight defendants[2] from his federal suit, seeking $500,000 in damages, attorney's fees and court costs.
 
 
 7
 In a "pre-screening entry" dated June 4, 1993, the Court of Claims struck the demand for attorney's fees because the court was not empowered to award that relief, and substituted the University of Cincinnati College of Medicine as defendant because "[u]nder [Ohio Rev.Code Sec.] 2743.02E, only state agencies and instrumentalities can be defendants in original actions in the Court of Claims." Thomson amended his complaint in the Court of Claims on June 8, 1993, suing the defendants as individuals "because [their] conduct was outside the scope of [their] employment or official responsibilities and in bad faith."
 
 
 8
 On June 30, 1993, defendants moved for dismissal of Thomson's claims in federal court based on this circuit's holding in Leaman, arguing that the causes of action in Thomson's suit in the Court of Claims and in federal district court were "based on the same act or omission." The district court agreed, and on September 14, 1993, it granted the motion, dismissing his remaining causes of action. Thomson timely appeals.
 
 II
 
 9
 A district court's conclusions of law are subject to de novo review on appeal. United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 274, 130 L.Ed.2d 191 (1994); Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989). An appellate court must review the evidence "in the light most likely to support the district court's decision." Braggs, 23 F.3d at 1049, citing United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988).
 
 
 10
 In Leaman v. Ohio Dept. of Mental Retardation and Development Disabilities, 825 F.2d 946 (6th Cir.1987) (en banc ), cert. denied, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 882 (1988), this court interpreted a provision of the Ohio Court of Claims Act as requiring a plaintiff who files suit against state officials in the Court of Claims to waive his federal, as well as state, causes of action. The pertinent provision reads:
 
 
 11
 [F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee.
 
 
 12
 Ohio Rev.Code Ann. Sec. 2743.02(A)(1) (Baldwin 1994) (emphasis added). The Leaman court found that the word "any" was unambiguous, and "the Ohio legislature clearly provided for waiver of federal causes of action." 825 F.2d at 952.
 
 
 13
 Ordinarily, Ohio state employees are entitled to immunity against state law claims for actions taken in their official capacities:
 
 
 14
 [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damages or injury caused in the performance of his duties, unless ... [his] actions were manifestly outside the scope of his employment or official duties, or unless [he] acted with malicious purpose, in bad faith, or in a wanton and reckless manner.[3]
 
 
 15
 Ohio Rev.Code Ann. Sec. 2743.02(A)(1) (Baldwin 1994).
 
 
 16
 Thus, our circuit interpreted the Court of Claims Act as establishing a quid pro quo, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees. Such a bargain did not impose an "unconstitutional condition" because until Ohio abandoned its sovereign immunity in the statute, plaintiffs had no cause of action at all:
 
 
 17
 The quid pro quo received by Ms. Leaman was not illusory, and the bargain she accepted was not unfair.... Ohio was under no constitutional duty to let itself be sued at all, and it was not unreasonable for the state to tell prospective plaintiffs ... "we will agree to let you sue the sovereign if you will agree to surrender your claims against the sovereign's servants." When one considers the depth of the sovereign's pockets in comparison to the depth of the servants', and when one remembers that Ms. Leaman was not required to give up her right to seek reinstatement through an injunction ... it is hard for us to see how the state could possibly be ... guilty of overreaching.
 
 Id. at 954-55. The court further noted:
 
 18
 The price seems small enough when one recalls that a finding of malice by the Court of Claims would have enabled Ms. Leaman to proceed with her punitive damages claims against the individuals--and absent malice, the claims had no merit anyway.
 
 
 19
 Id. at 956 n. 3.
 
 
 20
 The court also concluded that Leaman's waiver was voluntary because she was represented by competent counsel who "must be presumed to have known what the Court of Claims Act said." Id. at 956. Unlike a waiver in a criminal case, "it was not incumbent upon the court to make sure that her lawyer had adequately explained the effect of her action." Ibid.
 
 
 21
 Leaman has been followed in cases involving Ohio's Court of Claims Act, Haynes v. Marshall, 887 F.2d 700 (6th Cir.1989), and has been applied to similar statutes in other states. White v. Gerbitz, 860 F.2d 661 (6th Cir.1988) (Tennessee), cert. denied, 489 U.S. 1028, 109 S.Ct. 1160, 103 L.Ed.2d 219 (1989). Where Leaman has not been followed, it has been on the basis of factual distinctions rather than any disagreement with the principles in the case. See Carrelli v. Ginsburg, 956 F.2d 598, 603 n. 9 (6th Cir.1992); Majer v. Metropolitan Trans. Auth., 1992 WL 110995 (S.D.N.Y.1992).
 
 
 22
 The Ohio Supreme Court has held that a claim under Sec. 1983 may be brought directly in the Court of Common Pleas, and thus is not subject to Ohio Rev.Code Sec. 2743.02(F), which requires a preliminary determination by the Court of Claims of whether the state officials acted ultra vires. Conley v. Shearer, 64 Ohio St.3d 284, 595 N.E.2d 862, 869-70 (1992). Therefore, a plaintiff may choose to sue a state employee or official for violations of federal law in the Court of Common Pleas, recognizing that such a forum cannot grant money damages against the state. Conley and its progeny have reversed dismissals for lack of jurisdiction of suits filed in the Court of Common Pleas. Ibid.; Mullins v. Birchfield, 88 Ohio App.3d 170, 623 N.E.2d 651, 652 (1993); Johnson v. Morris, No. 93CA1969, 1993 WL 524976, at * 1-2 (Ohio.Ct.App. Dec. 13, 1993).
 
 
 23
 However, contrary to the dissent, Conley does not alter the calculus where a party chooses to waive certain claims in order to gain access to the state's coffers via the Court of Claims; then, a plaintiff's decision to file in that forum mandates dismissal under Sec. 2743.02(A)(1), not Sec. 2743.02(F). In such a case, a party's claims are dismissed "because she opted to bring a related action against a state agency in the Court of Claims." Egesimba v. Ohio Dep't of Rehabilitation and Correction, No. 92-3703, 1993 WL 262545, at * 2 (6th Cir. July 8, 1993). In essence, a plaintiff may sue the state under Sec. 1983 in the Court of Common Pleas instead of the Court of Claims, but if he chooses the latter, he is bound by his decision.
 
 III
 
 24
 The University of Cincinnati is a state instrumentality and therefore amenable to suit in the Ohio Court of Claims. McIntosh v. University of Cincinnati, 24 Ohio App.3d 116, 493 N.E.2d 321 (1985); Collins v. University of Cincinnati, 3 Ohio App.3d 183, 444 N.E.2d 459 (1981). The university's hospital is an agent of the university that is entitled to its immunity from suit in federal court. Dillion v. University Hosp., 715 F.Supp. 1384 (S.D.Ohio 1989).
 
 
 25
 The district court dismissed Thomson's suit in federal court because, while recognizing that his "different complaints allege distinct causes of action, both derive out of the same acts or omission surrounding the discharge of [Thomson] and his loss of funding." Order Granting Defendants' Motion to Dismiss, Sept. 14, 1993, at 2. This court must review whether the acts or omissions alleged in the district court were the same as those alleged in the state court. Lower court findings of ultimate facts based upon the application of legal principles to subsidiary facts are subject to de novo review. Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989); Taylor and Gaskin, Inc. v. Chris-Craft Indus., 732 F.2d 1273, 1277 (6th Cir.1984).
 
 
 26
 Thomson argues that his state claims contain no counterpart to his First Amendment claims that the defendants retaliated against him for his for his refusal to complete Medicare and Medicaid forms and for threatening to report lab irregularities to the NIH. In his brief, Thomson mistakenly assumes that the state and federal actions have to share the same legal or theoretical foundation--"[t]he claims in ... Ohio lie in contract and tort ... while the cause of action in the District Court is based on constitutional guarantees...." However, the same "acts" of retaliation by the defendants form the basis of his state court causes of action for defamation and promissory estoppel, and the statute specifically refers to an "act" rather than an "allegation" or "claim."[4]
 
 
 27
 Clearly, both the federal lawsuit and the action filed in the Ohio Court of Claims are "based on the same act or omission." The substitution of Dr. Ebersold for Dr. Luggen does not alter this analysis,[5] as all of Thomson's claims derive from his expulsion from Dr. Harmony's lab, the University's alleged failure to handle his grievances properly, and the resulting record of the conflict contained in Thomson's personnel file. In fact, Thomson admitted as much in his first complaint filed in federal court: "This Court also has pendent jurisdiction over the state claims since substantially the same evidence and facts will prove both the federal and nonfederal claims." Complaint at 3 (emphasis added).
 
 
 28
 Thomson's final arguments are that the district court decision improperly limits the ability of Sec. 1983 claimants to proceed in federal court independent of state interference, conflicts with federal constitutional remedies, and denies him a fair hearing. However, these same issues were raised and resolved in the Leaman case, id. at 953-57, and Leaman is still good law in this circuit. "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." Salmi v. Secretary of Health and Human Servs., 774 F.2d 685 (1985).
 
 IV
 
 29
 Although the substantial identity between the facts of Thomson's suit in federal court and his suit in the Ohio Court of Claims warrants dismissal under Leaman, Thomson's equitable claims survive regardless of whether they are "based on the same act or omission."
 
 
 30
 The district court originally denied the defendants' motion to dismiss Thomson's claims seeking declaratory and injunctive relief against the defendants in their official capacities, invoking the longstanding doctrine of Ex parte Young. Order Granting in Part and Denying in Part Defendants' Motion for Partial Dismissal, June 8, 1992, at 4-6. In Young, the Supreme Court held that the Eleventh Amendment's jurisdictional bar to suits against states in federal court does not apply to an action to enjoin a state official from violating federal law. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. The Court reasoned that an official cannot be acting on behalf of the state when she acts illegally or unconstitutionally, and therefore is not entitled to the state's immunity. Id.
 
 
 31
 The Court clarified the scope of the doctrine in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), where it held that the Eleventh Amendment prohibited retroactive relief, but allowed prospective relief compelling a state officer's compliance with federal law.[6] Thus, whether a plaintiff characterizes his suit as being in law or in equity is not dispositive, nor is whether the state is a named party in the suit. Id. at 666, 94 S.Ct. at 1357. Rather, the Court looked at the bottom line: whether the suit would "impose a liability which must be paid from public funds in the state treasury." Id. at 663, 94 S.Ct. at 1356. Prospective relief which has an incidental or ancillary effect on the state treasury will be allowed.[7] Id. at 668, 94 S.Ct. at 1358; see Quern v. Jordan, 440 U.S. 332, 347-49, 99 S.Ct. 1139, 1148-49, 59 L.Ed.2d 358 (1979) (requiring state to notify class members that it had acted illegally and inform them of administrative remedies was relief ancillary to injunction); Doe v. Wigginton, 21 F.3d 733, 737 (6th Cir.1994)
 
 
 32
 However, in this case, Thomson's claims for prospective relief do not pose a threat to Ohio's coffers, and thus fall squarely under the rule of Young. Any expense of implementing the requested relief would be minimal and ancillary to the main purpose and effect of Thomson's suit--eliminating all negative entries in his personnel record and reinstatement and support as a researcher.
 
 
 33
 Equitable claims of this sort are not waived by filing suit in the Court of Claims for several reasons. First, the quid pro quo rationale of Leaman is inapplicable where Ohio has no Eleventh Amendment immunity to trade for a plaintiff's surrender of his rights against state employees: Thomson always had the ability to proceed against the defendants pursuant to Young, so the state has offered no consideration for his waiver. Second, the incentive of access to the sovereign's deep pockets does not exist where money damages are not sought. Instead, Thomson is merely asking that if he prevails on the merits, the state must fulfill, through its employees, its pre-existing legal duty to comply with federal law. Young and Edelman makes clear that a state has no interest in shielding its servants from such an order.
 
 
 34
 Third, the bargain analysis of Leaman is further undermined by the Court of Claims's inability to grant any relief other than money damages. Thus, a party must choose between seeking equitable relief in the Ohio Court of Common Pleas or suing for monetary damages in the Court of Claims, a tradeoff and waiver not contemplated in Leaman.
 
 
 35
 Finally, this circuit does not require waiver of equitable claims in federal court actions. As stated by the court in Leaman --"when one remembers that Ms. Leaman was not required to give up her right to seek reinstatement through an injunction ... it is hard for us to see how the state could possibly be ... guilty of overreaching." 825 F.2d at 955.
 
 V
 
 36
 Finding that Thomson's lawsuit in federal court is "based on the same act[s] or omission[s]" as his suit filed in the Ohio Court of Claims, we AFFIRM the district court's dismissal of Thomson's claims for monetary damages, but REVERSE the dismissal of his claims for prospective relief.[8]
 
 
 37
 MERRITT, Chief Judge, dissenting.
 
 
 38
 In Leaman v. Ohio Dep't of Mental Retardation and Dev. Disabilities, 825 F.2d 946, 960 (6th Cir.1987), I dissented on several grounds, one of which was that even in 1987 it seemed to me that "rulings from the Ohio courts indicate that the constitutional violations which form the basis for the Sec. 1983 action would be outside the scope of employment and therefore not waived" and that under Ohio case law "merely filing a Court of Claims suit does not create an irrevocable waiver [of Sec. 1983 claims] under Ohio Rev.Code Ann. Sec. 2743.02(A)(1) (Baldwin 1986)[citing and discussing cases]." Id. at 963. I adhere to that view because now it is even more clear that the provisions of the Court of Claims waiver statute, "R.C. 2743.02 and R.C. 9.86 ... do not apply to claims brought under federal law," Conley v. Shearer, 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869 (1992).[1] The Supreme Court of Ohio has now expressly agreed that federal claims are not waived as a matter of Ohio law, and we should simply admit our mistake in Leaman and not persist in it, as though we know more about Ohio law than the Ohio Supreme Court. It did not make much sense in 1987 to hold that Ohio, without saying so expressly, had attempted to oust the federal courts of Sec. 1983 jurisdiction, and it makes even less sense now after the Supreme Court of Ohio has said so with pluperfect clarity. Why should we continue to search for a way to deny Sec. 1983 jurisdiction? We serve no policy or purpose in doing so, and the Ohio courts do not agree with us.
 
 
 
 *
 Judge Merritt would grant rehearing for the reasons stated in his dissent
 
 
 [1]
 Thomson's claims for injunctive relief are among his most important. He seeks reinstatement to a position as a researcher, an order that the hospital support his efforts for future research funding, and the defendants' expungement from his record of all negative entries arising from his dispute with Dr. Harmony and the hospital
 
 
 [2]
 Thomson added Dr. Michael E. Luggen as a defendant based on his alleged defamation arising from a negative recommendation; Dr. Ebersold was dropped from the state lawsuit
 
 
 [3]
 An action alleging that the state officer's actions falls within one of these exceptions "shall first be filed against the state in the Court of Claims, which has exclusive, original jurisdiction to determine, initially, whether the officer is entitled to civil immunity under Sec. 9.86...." Ohio Rev.Code Sec. 2743.02(F); Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir.1989). If the Court of Claims finds that a state employee's actions were ultra vires or malicious, the plaintiff's waiver is void and a lawsuit in federal court may be reinstated. Walton v. Dallman, No. 90-3285, 1990 WL 146915 (6th Cir.1990), citing Leaman, 825 F.2d at 952-53
 
 
 [4]
 Thomson also erroneously claims Leaman is inapplicable because his state court suit does not have the same defendants as his federal suit, nor was it filed simultaneously, as Thomson claims was the case in Leaman. A close reading of Leaman reveals that the state and federal suits were not filed simultaneously. Moreover, the statute does not limit its scope by either requiring simultaneous filing or restricting who may be a defendant, but instead is directed toward "cause[s] of action based on the same act or omission."
 
 
 [5]
 Thomson also contends that because he sued different defendants in his state action than in his federal claim, Leaman does not apply. By adding a new defendant (Dr. Luggen) in his state court claim, Thomson can not evade dismissal of his entire federal suit--that would reduce Leaman to a formality of pleading a "straw man" defendant in the Court of Claims
 
 
 [6]
 In Edelman, the plaintiffs sought an injunction requiring state officials to process a federal-state aid program promptly, in accordance with the controlling federal statute, as well as recovery of funds not paid in the past due to the improper processing. The Court permitted the former, but denied the payment of past monies despite the equitable nature of the claim
 
 
 [7]
 Distinguishing between legitimate or incidental costs of implementing a government program or court order has often proved difficult. See Edelman, 415 U.S. at 667, 94 S.Ct. at 1357 ("The difference between the type of relief barred ... and that permitted under Ex parte Young will not in many instances be that between day and night."); see also, Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (allowing attorney's fees in suit seeking injunction against state); Hall v. Medical College of Ohio at Toledo, 742 F.2d 299, 304-05 (6th Cir.1984) (looking to state law to determine whether recovery would come out of independent funds of state medical school), cert. denied, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); Foulks v. Ohio Dep't of Rehabilitation and Correction, 713 F.2d 1229, 1232 (6th Cir.1983) (reversing award of relief "[e]ntirely retrospective in nature")
 
 
 [8]
 Implicit in this ruling is that Thomson may reinstate his federal suit if the Court of Claims finds that the defendants are not entitled to immunity. Crooks v. Stokes, No. 87-3860, 1989 WL 112995, at * 2 (6th Cir.1989). Accordingly, the statute of limitations on Thomson's federal claims are tolled in the interim. Id., see Walton, 1990 WL 146915 ("the mere filing of a claim against the state does not necessarily divest the federal court of jurisdiction....")
 
 
 [1]
 The entire relevant language from Chief Justice Moyer's unanimous opinion in Conley is as follows:
 The trial court dismissed Conley's Section 1983 claim on the same grounds as his other claims, i.e., lack of subject matter jurisdiction pursuant to R.C. 2743.02 and R.C. 9.86. Those sections, however, do not apply to claims brought under federal law. R.C. 9.86 expressly limits its coverage to "any civil action that arises under the law of this state * * *." (Emphasis added.)
 Moreover, the United States Supreme Court has concluded that " ' "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. Sec. 1983 or Sec. 1985(3) cannot be immunized by state law," ' " " 'even though the federal cause of action [was] being asserted in the state courts.' " Howlett v. Rose (1990), 496 U.S. 356, 376, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332, 353, quoting Martinez v. California (1980), 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488, and at fn 8. The court in Howlett continued, " '[a] construction of [Section 1983 or 1985(3) ] which permit[s] a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.' "
 
 
 [595]
 N.E.2d at 869. (Emphasis added.)