Melda TURKER, Plaintiff–Appellant,

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, et al., Defendants–Appellees.

No. 96–3873.

United States Court of Appeals, Sixth Circuit.

Submitted May 1, 1998.

Decided Oct. 5, 1998.

Melda Turker (briefed), Moreland Hills, OH, for Plaintiff–Appellant.

Robert L. Griffin, Asst. Attorney Gen. (briefed), Richard N. Coglianese, Office of the Attorney General of Ohio, James G. Petrie (briefed), Columbus, OH, for Defendants–Appellees.

Before: JONES, MOORE, and COLE, Circuit Judges.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Pro se plaintiff-appellant Melda Turker appeals the district court's dismissal of her civil rights lawsuit seeking equitable and monetary relief against various state officials on the grounds that the district court misread our decisions in *Leaman v. Ohio Dep't of Mental Retardation and Development Disabilities*, 825 F.2d 946 (6th Cir.1987) (en banc) and *Thomson v. Harmony*, 65 F.3d 1314 (6th Cir.1995), *cert. denied*, 517 U.S.

1105, 116 S.Ct. 1321, 134 L.Ed.2d 473 (1996). Because neither *Leaman* nor *Thomson* bars Turker's quest for equitable relief in federal court, we hold that the district court erred in dismissing Turker's entire lawsuit.

## I.

From 1976 until 1992, Turker was employed by defendant Ohio Department of Corrections ("ODRC"). She worked as a state jail inspector since 1980.

In 1991, several mayors of cities in Cuyahoga County complained to Ohio Lieutenant Governor Michael DeWine (who oversaw the ODRC) about "intense" scrutiny the jails in their cities were receiving from Turker in her effort to have the jails comply with state standards as reflected in the Ohio Administrative Code. Turker also discovered in December 1991 that Defendant–Appellee Jill Goldhart, Deputy Director of ODRC's Division of Parole and Community Services, was engaged in consulting work in violation of ODRC policy and state law. Turker reported this information to the Lieutenant Governor's office, which subsequently disciplined Goldhart.

On February 6, 1992, shortly after Turker gave an interview to the *Cleveland Plain Dealer* regarding the failure of several jails to conform to state standards, Defendant–Appellee Michael Lee, Bureau Chief of the Bureau of Adult Detention and Turker's supervisor, ordered her to relax her scrutiny of the jails in Cuyahoga County and terminate her ongoing investigations. Lee followed up this oral directive with a written one to the same effect on February 11, 1992.

Beginning in March 1992, the ODRC changed its travel reimbursement policy retroactive to January 3, 1992. Turker discussed these changes with an on-site supervisor who told her to continue following the old policy with the understanding that someone would contact her if it posed a problem. As a result, Turker continued submitting reimbursement reports under the old policy that were incorrect under the new policy. Nevertheless, her supervisor continued to approve those reports without ever alerting her to the inaccuracies. Not only did the supervisor

fail to alert Turker to the inaccuracies in her reimbursement forms, but Lee, Goldhart, and others began covert surveillance of Turker's travel mileage and parking receipts. This surveillance lasted from April 1992 to September 1992. Those defendants (Lee, Goldhart, and others) then presented the information to the proper authorities at the ODRC who eventually terminated Turker on December 30, 1992 based upon the inaccuracies in her reimbursement reports.

After causing Turker's termination, those same defendants then presented the information to the Cuyahoga County Prosecutor who obtained a seventeen-count indictment against Turker. Following further investigation, the prosecutor moved to *nolle prosequi* the charges, which was recorded on August 31, 1994. Nevertheless, while the charges were still pending against Turker, on May 3, 1993, Defendant–Appellee James Buccieri, ODRC's Regional Director of the Adult Parole Authority, published to several employees within the ODRC the fact that Turker had been charged with theft.

On December 29, 1994, Turker, then represented by counsel, filed a complaint in the United States District Court for the Northern District of Ohio, listing the ODRC, Goldhart, Lee, Buccieri, John Does I and II, and an unnamed Bureau Chief with the ODRC as defendants. All of the defendants are either agents or instrumentalities of the State of Ohio. In her complaint, Turker alleged violations of her civil rights pursuant to 42 U.S.C. § 1983, her constitutional rights under the First and Fourteenth Amendments, and state law torts of malicious prosecution, abuse of process, wrongful discharge, and intentional infliction of emotional distress. The only specific relief Turker sought in the complaint was monetary damages.

On January 20, 1995, defendants filed a motion to dismiss and a motion to stay discovery. On February 16, 1995, the district court agreed to stay discovery in the case pending resolution of the motion to dismiss. On March 10, 1995, Turker filed an amended complaint in the district court, and, for the first time, specifically requested reinstatement to her position at ODRC and declaratory relief. J.A. at 82 (Amended Complaint).

On March 14, 1995, Turker filed a complaint against the defendants in the Ohio Court of Claims. It appears that sometime in August 1995, Turker voluntarily dismissed the state action. However, she refiled it on January 16, 1996. The second state complaint was virtually identical to the action pending in the district court.

As a result of the refiled state complaint, the defendants filed a second motion to dismiss in the district court on February 6, 1996. In that motion, the defendants argued that by filing an action against them in the Court of Claims, Turker waived her claims against the defendants in the federal action, and therefore, the federal case should be dismissed. The district court agreed and dismissed the federal action as to all defendants.

Turker then filed a timely appeal in this court, but voluntarily dismissed it on February 13, 1997. Henceforth proceeding pro se, Turker subsequently moved this court for reinstatement of the appeal, contending that her attorney dismissed her appeal without her approval. On April 25, 1997, this court granted Turker's motion to reinstate her appeal.

## II.

■ Whether the district court correctly dismissed the suit pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to de novo review. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 2409, 138 L.Ed.2d 175 (1997). The court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove any set of facts in support of her claim that would entitle her to relief. *Id.*

In her federal lawsuit, Turker asserted claims for equitable and monetary relief against the ODRC and its employees in both their official and individual capacities. Our task is to determine whether the district court was correct in granting the defendants' motion to dismiss on the basis that Turker had waived her federal action by filing her complaint in the Ohio Court of Claims.

In 1975, the Ohio General Assembly enacted the Ohio Court of Claims Act, Ohio Rev. Code. § 2743.01–.72 ("O.C.C.A."), which governs Ohio's waiver of sovereign immunity and consent to be sued in the Ohio Court of Claims. The provision most pertinent to this appeal reads:

> The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter and, in the case of state universities or colleges, in section 3345.40 of the Revised Code, and except as provided in division (A)(2) of this section. To the extent that the state has previously consented to be sued, this chapter has no applicability.
>
> Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer or employee, as defined in section 109.36 of the Revised Code. The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Rev.Code. § 2743.02(A)(1).

■ The district court's disposal of Turker's claims for monetary damages was proper. It is well-established that a plaintiff cannot sue a state agency or any of its employees in their official capacities for monetary damages. *See, e.g., Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.,* 987 F.2d 376, 381 (6th Cir.1993) (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) and *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890)), *cert. denied,* — U.S. —, 117 S.Ct. 2448, 138 L.Ed.2d 206 (1997). It is equally

well-established that a federal court cannot entertain a lawsuit against state officials for violations of state law unless the state has waived its immunity under the Eleventh Amendment.[1] *See, e.g., Freeman v. Michigan, Dep't of State,* 808 F.2d 1174, 1179–80 (6th Cir.1987) (citing *Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900). Ohio has not waived that immunity. *See Haynes v. Marshall,* 887 F.2d 700, 705 (6th Cir.1989).

■ A plaintiff however, may sue state officials for monetary damages in their individual capacities under § 1983 without running afoul of the Eleventh Amendment. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). To this end, the district court held that, based on this court's decision in *Leaman v. Ohio Dep't of Mental Retardation,* 825 F.2d 946 (6th Cir.1987) (en banc), Turker had waived any claim of monetary damages against the defendants by filing her action in the Ohio Court of Claims.

In *Leaman,* a former employee of the Ohio Department of Mental Retardation ("ODMR") initially brought a federal cause of action against the ODMR and certain of its officials for unconstitutionally terminating her employment. She subsequently brought a substantially similar cause of action against the ODMR in the Ohio Court of Claims. The defendants moved for dismissal, arguing that under § 2743.02, the plaintiff waived her claims against the state officials by filing an action in the Ohio Court of Claims. The district court agreed and dismissed the action.

The plaintiff appealed, asserting that her filing of the court of claims suit should have had no adverse impact on her *federal* cause of action since the Ohio waiver statute limited any waiver to claims arising under *state* law. An en banc panel of this court interpreted the O.C.C.A. as creating a *quid pro*

*quo* in which the state agreed to forego its sovereign immunity in exchange for the plaintiff's waiver of claims against the state's employees. *Leaman,* 825 F.2d at 954. The *Leaman* court concluded that the O.C.C.A. mandated that once the plaintiff elected to go after the sovereign state's "deep pockets" in the Court of Claims, the plaintiff waived not only state causes of action against state employees, but federal claims as well. *Id.* at 953–54.

Although this portion of *Leaman* produced six dissenters, and has been the target of much scholarly criticism,[2] it remains the law of this circuit. *See, e.g., Portis v. State of Ohio,* 141 F.3d 632, 633–34 (6th Cir.1998) (applying *Leaman* ). Most pertinent to Turker's case is that *Leaman* was followed in *Thomson v. Harmony,* 65 F.3d 1314 (6th Cir.1995), *cert. denied,* 517 U.S. 1105, 116 S.Ct. 1321, 134 L.Ed.2d 473 (1996), a case that bears many similarities to the case *sub judice.* In *Thomson,* the plaintiff sued several defendants connected with the University of Cincinnati College of Medicine for damages and equitable relief under § 1983 in federal court. He subsequently filed a complaint against several of the same defendants in the Ohio Court of Claims asserting violations of state law. This court, citing *Leaman,* ruled that the plaintiff had waived any claim of damages against the state officials by virtue of his filing the action in the Court of Claims. *Id.* at 1318–20.

■ Much like Turker contends now, the plaintiff in *Thomson* argued that the *Leaman* court erroneously and unduly interpreted the O.C.C.A. as pertaining to federal causes of action. However, the *Thomson* court rejected this argument, noting that a "panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an in-

---

1. The Eleventh Amendment provides:

    The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

    U.S. CONST. amend. XI.

2. *See* Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983 § 9:72 (4th ed.1997); Richard B. Saphire and Susan W. Brenner, *The Effect of the Ohio Court of Claims Act on Civil Rights Actions in State and Federal Courts,* 22 U. Tol. L. Rev. 167, 197–213 (1991); Steven H. Steinglass, *Section 1983 and the Reaganization of the Sixth Circuit: Closing the Doors to the Federal Courthouse,* 20 U. Tol. L. Rev. 497, 571–78 (1989).

consistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Id.* at 1320 (*quoting Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985)). Because we are bound to follow both *Leaman* and *Thomson*, we agree with the district court's finding that Turker waived any monetary claims against the defendants in federal court when she filed her action in the Court of Claims. Thus, we conclude that the district court was correct when it dismissed Turker's monetary damages claims against the ODRC and its employees.

We must make one addendum to the above discussion. Ohio has created a limited exception to the rule that state employees may not be sued in their official capacities. As set forth in § 2743.02(A)(1), Ohio state employees can be sued for damages in their official capacities if their actions were "manifestly outside the scope of [their] office or employment or [they] acted with malicious purpose, in bad faith, or in a wanton and reckless manner." The determination of whether a state employee's actions were *ultra vires* or malicious is to be made exclusively by the Ohio Court of Claims. *See* Ohio Rev.Code § 2743.02(F); *Thomson*, 65 F.3d at 1318 n. 3; *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir.1989).

The district court noted that at the time it was considering the motion to dismiss, the Ohio Court of Claims had not yet determined whether the defendants' alleged actions were taken outside the scope of their employment, or with a malicious purpose, in bad faith or in a wanton or reckless manner. Should the Ohio Court of Claims so find, then the district court (as it held) must reinstate Turker's claims as if no waiver had ever occurred. *See White v. Gerbitz*, 860 F.2d 661, 665 (6th Cir.1988).[3]

In an alternative argument, Turker asserts that any purported waiver should be voided because her attorney did not fully explain to her the consequences of filing the Court of Claims action (i.e., that by doing such, she could not seek monetary redress in federal court). Thus, Turker contends, her relinquishment of her rights was not "knowing, intelligent, and voluntary." Turker Br. at 14–15.

It is always unfortunate when attorneys fail to fully apprise their clients of the tactical decisions to be made in lawsuits. While we are sympathetic to Turker's predicament, we cannot afford her relief. The plaintiff in *Leaman* made a substantially identical argument that her attorney did not convey to her the nature of the *quid pro quo* of the O.C.C.A. before filing an action in the Court of Claims. This court rejected the *Leaman* plaintiff's argument that she had not made a "knowing, intelligent, and voluntary waiver of her right to bring claims against officers and employees of the state." *Leaman*, 825 F.2d at 956. We elaborated on the point as follows:

> Ms. Leaman's counsel must be deemed to have known that the price of suing the state in the Court of Claims would be the surrender of Ms. Leaman's punitive damages claims against her superiors in the Department of Mental Retardation, unless the Court of Claims could be persuaded that those individuals acted outside the scope of their employment or maliciously. It was not the duty of any court to explore the adequacy of communication between client and counsel before permitting the complaint in the Court of Claims suit to be accepted for filing. And where a claimant represented by competent counsel has elected to accept Ohio's statutory offer to subject itself to suit in the Court of Claims in exchange for a waiver of claims against individual state officials, nothing in the

3. The district court indicated that Turker would only be permitted to pursue her state claims in the event that she obtain a favorable ruling from the Court of Claims. Although *Gerbitz* interpreted Tennessee's counterpart to the O.C.C.A., the statutes were substantively identical and nothing in *Gerbitz* precluded reinstatement of the federal claims as well as pendent state claims in Turker's circumstances. *See Gerbitz*, 860 F.2d at 665

("the plaintiff may present an order within sixty (60) days of the state action reinstating his *claims* to the federal district court's docket") (emphasis added). Defendants concede the point in their brief that Turker should be allowed to reinstate her federal claims along with her state claims should the Ohio Claims Court determine that the defendants' acts were outside the scope of their employment. Def. Br. at 23–24.

Constitution entitles the claimant to repudiate the waiver if she or he loses the suit in the Court of Claims and does not even appeal the decision.

*Id.* at 956–57 (footnote omitted). Since Turker does not allege that her counsel was incompetent, (Turker Br. at 15), we, like the *Leaman* panel, must presume that counsel understood the meaning of the O.C.C.A. Indeed, since counsel in this case had the benefit of the *Leaman* and *Thomson* decisions, the presumption that counsel appreciated the consequences of filing the Court of Claims action is all the greater. Accordingly, "it [is] not incumbent upon the court to make sure that [Turker's] lawyer had adequately explained the effect of her action." *Id.* at 956.

### III.

■ Dismissal of the monetary claims leaves only Turker's prayer for reinstatement to her position at ODRC. The district court did not directly address the reinstatement request in its opinion. Instead, it appears that the district court assumed that under *Leaman*, the reinstatement claim had been waived as well by Turker's filing in the Ohio Court of Claims.

Our decisions in *Leaman* and *Thomson* compel reversal. In dicta, the *Leaman* court reminded plaintiffs that

[t]he Ohio statute gives claimants an option not otherwise available to them, and any claimant who does not like the statutory option is perfectly free to reject it and prosecute a § 1983 action against the state's officials just as if the [O.C.C.A.] had never been passed. Such an action may be maintained either in federal court or in an Ohio court of common pleas, without any necessity of filing an action in the Court of Claims. *It is settled under Ohio law, moreover, that the [O.C.C.A.] would not prevent such a claimant from seeking declaratory or injunctive relief against the Department of Mental Retardation itself, again without any necessity of suing in the Court of Claims.*

*Leaman,* 825 F.2d at 953 (emphasis added). The *Thomson* court, under similar circumstances as those presented by the case at bar, adopted the *Leaman* dicta as its holding.

In addition to monetary damages (which had been waived under *Leaman*) against his state university employer, the *Thomson* plaintiff also sought reinstatement to his position as a researcher. *Thomson* held that when a federal court plaintiff files a related action in the Ohio Court of Claims, then the *Leaman* decision only requires the federal court to dismiss the plaintiff's damages claims and not the plaintiff's claims for prospective equitable relief. *Thomson,* 65 F.3d at 1320–21.

■ Together *Leaman* and *Thomson* provide that where a federal court plaintiff files a related action in the Court of Claims, she has waived her right to sue the state officials for monetary damages in federal court, but she has not waived her claims for prospective equitable relief. The *Thomson* court offered several justifications for the rule. First, *Thomson* noted that with regard to equitable relief, there was no *quid pro quo* because under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), a state has no Eleventh Amendment immunity to "bargain" against prospective equitable claims. *Thomson,* 65 F.3d at 1320–21. Second, prospective equitable relief, such as injunctions or reinstatement, has only an incidental or ancillary effect on a state's treasury. *Id.* at 1320–21. Finally, the *Thomson* court reasoned that it would have been unduly harsh to hold that a plaintiff waives prospective equitable claims when she files an action in the Court of Claims, since the Court of Claims was without power to grant any relief other than money damages. *Id.* at 1321. Of course, reinstatement to a job position clearly falls within the purview of prospective equitable relief. *See Hall v. Medical College of Ohio,* 742 F.2d 299, 310 (6th Cir.1984) (reinstatement qualifies as a form of equitable relief); *accord Coakley v. Welch,* 877 F.2d 304, 306–07 (4th Cir.1989) (same).

Applying *Leaman* and *Thomson* to Turker's situation, it is clear that by filing a related action in the Ohio Court of Claims against the same ODRC officials she was suing in federal court, Turker waived her claims for monetary damages against those

officials under *Leaman.* Nevertheless, under *Thomson,* she could maintain her action against those officials on her reinstatement claim because it is a form of prospective equitable relief. Thus, we must reverse the district court's order to the effect that it dismissed Turker's claims for reinstatement.

 The defendants expend much energy attacking *Thomson* for permitting equitable remedies after a plaintiff has filed an action in the Court of Claims. According to defendants, *Thomson* violates the spirit, if not the letter, of the O.C.C.A., which states that "filing a civil action in the court of claims results in a complete waiver of *any* cause of action[.]" Ohio Rev.Code § 2743.02(A)(1) (emphasis added).[4] However, as already discussed, absent a contrary decision from the United States Supreme Court, only an en banc panel of this court may overrule a previous decision of this court. Thus, as we are bound by *Leaman's* holding that the O.C.C.A. precludes a federal action for monetary damages after a claimant has sought redress in the Court of Claims, we are also bound by *Thomson's* holding that federal claims grounded on equitable relief are permissible under the O.C.C.A.

Being so bound, assuming that we were to share the dissenting view of our colleague Judge Merritt in *Thomson*[5] that the Ohio Supreme Court's decision in *Conley v. Shearer,* 64 Ohio St.3d 284, 595 N.E.2d 862 (Ohio 1992), renders *Leaman* wrongly decided, we are precluded from departing from *Leaman* and *Thomson's* holdings. That can only be done by an en banc court. Of course, such a course of action remains open to both Turker and the defendants.

## IV.

For the reasons stated herein, we AFFIRM the district court in as much as it

dismissed Turker's claims for monetary damages. We REVERSE the district court's dismissal of Turker's request for reinstatement and REMAND for proceedings in accordance with this opinion.

---

**4.** Defendants also sharply criticize *Thomson's* characterization of the Court of Claims as being without jurisdiction to afford equitable relief, a rationale upon which *Thomson* based its decision to allow equitable claims in federal court. *See Thomson,* 65 F.3d at 1321. Defendants point out that the O.C.C.A. empowers the Court of Claims with "full equity powers in all actions within its jurisdiction." Ohio Rev.Code § 2743.03(A)(1). A recent unpublished Ohio appellate court decision rendered similar complaints against this portion of *Thomson. See Staton v. Henry,* No. CA97–10–184, 1998 Ohio App. LEXIS 1762, 1998 WL 204937, at *13 n. 2 (Ohio App. 12 Dist. Apr. 27, 1998).

**5.** *See Thomson,* 65 F.3d at 1321–22 (Merritt, C.J., dissenting) (arguing that *Conley* makes clear that the O.C.C.A. has no bearing on federal actions).