**Sheila L. THOMAS, Plaintiff,**

v.

**OHIO DEPARTMENT OF REHA-
BILITATION AND CORREC-
TION, et al., Defendant.**

No. C2–95–159.

United States District Court,
S.D. Ohio,
Eastern Division.

March 3, 1999.

Kenneth Foye Murray, Columbus, OH, Joseph Scott Streb, Columbus, OH, for Plaintiff.

Mary Beth Foley, Ohio Atty. Gen., Employment Law Section, Columbus, OH, for defendant Ohio Dept. of Rehabilitation and Corrections.

Roger Lee Clark, Kimble, Stevens, Young & Clark, Portsmouth, OH, for defendant Charles H. Harrington.

## OPINION & ORDER

MARBLEY, District Judge.

Plaintiff Sheila Thomas brought this lawsuit against the Ohio Department of Rehabilitation and Correction ("ODRC") and Charles Harrington, alleging, *inter alia,* that while she was employed by ODRC and supervised by Harrington, Harrington wiretapped her office. Plaintiff's federal law claims included sex and race discrimination under Title VII, 42 U.S.C. § 2000e *et seq.;* violation of Title III of the Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.;* and violation of 42 U.S.C. § 1981 and the Fourth, Fifth, and Fourteenth Amendments of the Constitution. Plaintiff seeks only money damages.

The Court dismissed ODRC as a defendant in this case on September 30, 1998, finding that ODRC did not violate Title VII or the Crime Control and Safe Streets Act, and that Thomas' claim of sexual harassment was not cognizable under § 1981. On November 5, 1998, Harrington made a motion for leave to file a motion for summary judgment *instanter;* the Court granted this motion. Now, Harrington moves for summary judgment on Thomas' remaining claims.

### I.

Thomas began to work for the Ohio Department of Rehabilitation and Corrections in September, 1988. Initially hired as a clerical specialist, she was promoted to the position of substance abuse secretary at the Franklin County Pre-release Center in July, 1991. There, Plaintiff's immediate supervisor was Charles Harrington, psychologist and supervisor of the Substance Abuse Department.

On June 24, 1994, Thomas discovered a wireless microphone behind her desk. Thomas reported this discovery to several ODRC and union officials and she filed several incident reports regarding the wiretapping device in her office; Thomas suspected that Harrington had placed it there. ODRC immediately placed Harrington on administra-

tive leave, revoking all supervisory authority he had over Thomas.

That summer, the Ohio Highway Patrol ("OHP") commenced an investigation of the incident. As part of this investigation, OHP Sergeant Campbell conducted an interview of Harrington. According to Campbell, Harrington admitted that he wiretapped Thomas' office and said this decision was motivated in part because of racial tensions in the office. The parties dispute whether the device ever actually worked. A criminal case was brought against Harrington, in which he admitted that the wiretapping device belonged to him and that he had "bugged" Thomas' office.

Following her discovery of the wiretapping equipment, Thomas remained at ODRC, and kept her job. She was not demoted, nor did she lose any salary or benefits. She instituted this action on February 8, 1995.

## II.

█ As a preliminary matter, Thomas has recently asserted, in her Notice of Stipulation of Pending Claims, that she is advancing only two theories of recovery against Harrington: first, violation of the federal wiretapping statute, 18 U.S.C. § 2510, *et seq.*, and, second, violation of Thomas' civil rights under 42 U.S.C. § 1983. The Court has no objection to Thomas limiting the scope of her claims. Thomas did not, however, include a § 1983 claim in either her original or amended complaints. She may "limit" her claims only to those which she previously asserted. The Court, therefore, will confine its analysis to Thomas' wiretapping claim.[1]

## III.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV.

█ The Court must dismiss this case because Thomas filed a nearly identical suit in the Ohio Court of Claims on December 5, 1996, thus waiving any cause of action she might have had against Harrington. Ohio Revised Code § 2743.02(A)(1) provides:

---

1. In his motion for summary judgment, Harrington asserts several arguments against (1) Thomas' original § 1981 claim, and (2) Thomas' Title VII claim. This Court will not address these issues, as (1) the § 1981 claim has already been

dismissed, and (2) individuals cannot be held personally liable under Title VII. *See Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997).

The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims. . . .

. . . [F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer of employee, as defined in section 109.36 of the Revised Code. The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office of employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Rev.Code § 109.36(A)(1) defines "officer or employee" as a person who, "at the time a cause of action against the person arises," is employed by, or is rendering some service to, the state. It is undisputed that Harrington was employed by ODRC at all times during his wiretapping; therefore, Harrington qualifies as an "employee" under § 2743.02(A)(1).

The Sixth Circuit has, on several occasions, declared the validity of § 2743.02(A)(1). In *Leaman v. Ohio Dep't of Mental Retardation*, 825 F.2d 946 (6th Cir.1987), the Sixth Circuit held that once a plaintiff elects to go after the sovereign state's "deep pockets" in the Court of Claims, the plaintiff waives not only state causes of action against state employees, but federal claims as well, under § 2743.02(A)(1). *Id.* at 953–54. Finding that the Ohio statute did not frustrate federal laws, the Sixth Circuit maintained:

> In no way does the Ohio statute shut the doors of the federal courts on claimants who are unwilling to forego suit there. It does not deprive claimants of their federal forum. The Ohio statute simply offers to make available an otherwise unavailable deep-pocket defendant, and an alternative forum, if prospective plaintiffs who think they have claims against individual state employee voluntarily elect to waive suit

against the employees in favor of suit against the employer.

*Id.* Further, the *Leaman* Court held that such waiver is "knowing, intelligent and voluntary" because a plaintiff's counsel "must be deemed to have known that the price of suing the state in the Court of Claims would be the surrender of [the plaintiff's claims] against her superiors . . . unless the Court of Claims could be persuaded that those individuals acted outside the scope of their employment or maliciously." *Id.* at 956.

The Sixth Circuit reaffirmed its position in *Leaman* in *Thomson v. Harmony*, 65 F.3d 1314 (6th Cir.1995).[2] The *Thomson* Court found that *Leaman* interpreted § 2743.02(A)(1) as "establishing a *quid pro quo*, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees." *Id.* at 1318. Most recently, in *Turker v. Ohio Dep't of Rehabilitation and Corrections*, 157 F.3d 453 (6th Cir.1998), the Sixth Circuit reiterated that "*Leaman* and *Thomson* provide that where a federal court plaintiff files a related action in the Court of Claims, she has waived her right to sue the state official for monetary damages in federal court." *Id.* at 459.

In the present case, there are no material facts in question with regard to the waiver issue. Thomas does not dispute that Harrington was an employee of ODRC, as defined in § 109.36(A)(1), when he wiretapped her office; that she filed an identical suit in the Ohio Court of Claims on December 5, 1996; or that § 2743.02(A)(1) is applicable to her case. In fact, Plaintiff did not address the waiver issue *at all* in her Memorandum Contra Harrington's Motion for Summary Judgment. Although Thomas thus waived the waiver issue, this Court's decision is not based upon her failure to respond, but rather upon the clearly established law of the Sixth Circuit. Section 2743.02(A)(1) of the Ohio Revised Code, as well as the decisions of *Leaman*, *Thomson* and *Turker*, mandate this Court's conclusion that Thomas waived her

---

**2.** While *Thomson* also established that injunctive suits do not entail a waiver under § 2743.02(A)(1), this holding is irrelevant in the

instant case, as Thomas has only demanded monetary relief.

right to sue Harrington in this Court when she filed suit in the Ohio Court of Claims.[3]

For the foregoing reasons, Harrington's motion for summary judgment is **GRANT-ED.** This case is **DISMISSED.**[4]

**IT IS SO ORDERED.**

---

3. In ancillary pleadings with this Court, Thomas asserted that she dismissed her Court of Claims suit before it was decided on the merits. This fact is immaterial. The waiver contemplated in § 2743.02(A)(1) occurs when a plaintiff *files* a case in the Court of Claims, not when she receives a final decision on it. The language of the statute, as well as that of the Sixth Circuit cases of *Leaman, Thomson* and *Turker* indicate that filing, alone, is sufficient to trigger the waiver. Here, the *"quid"* in Thomas' *quid pro quo* existed in the form of her ability to file suit against the state, not to litigate it fully.

4. Of course, should the Ohio Court of Claims find that Harrington's actions were taken outside the scope of their employment, or with a malicious purpose, in bad faith or in a wanton or reckless manner, this Court can reinstate Thomas' 18 U.S.C. § 2510 claim as if no waiver ever occurred, in accordance with § 2743.01(A)(1). *See Turker,* 157 F.3d at 458. The question of whether Harrington's actions were within the scope of his employment is to be addressed exclusively by the Court of Claims. *Id.*