887 F.2d 700
 Edna M. HAYNES, Individually as mother of Jimmy J. Haynes,
deceased, and as administratrix of the estate of
Jimmy J. Haynes, deceased, Plaintiff-Appellee,
v.
Ronald S. MARSHALL, et al., Defendants-Appellants.
 No. 88-3969.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 13, 1989.
Decided Oct. 12, 1989.
 
 Richard Saphire (argued), Susan Brenner, Dayton, Ohio, and Robert L. Gensler, Novato, Cal., for plaintiff-appellee.
 Allen P. Adler, Asst. Atty. Gen. (argued), Office of the Atty. Gen. of Ohio, Columbus, Ohio and Steven P. Fixler, Asst. Atty. Gen., Office of the Atty. Gen. Federal Litigation Section, Cincinnati, Ohio, for defendants-appellants.
 Before KENNEDY, GUY and NORRIS, Circuit Judges.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Defendants are prison officials and law enforcement personnel at the Southern Ohio Correctional Facility ("SOCF") who were sued in their individual and official capacities for damages resulting from the death of an inmate, Jimmy J. Haynes. He died from injuries received while being moved from the prison infirmary to a security cell. Defendants appeal from the denial of their motions for summary judgment seeking qualified immunity from Haynes' claim under 42 U.S.C. Sec. 1983. Also involved is their appeal from the district court's decision to exercise pendent jurisdiction over Haynes' state-based wrongful death claim. For the following reasons, we affirm the summary judgment denying inmunity on the section 1983 claim, and vacate the order asserting pendent jurisdiction over the wrongful death claim.
 
 I.
 
 2
 Haynes had a history of psychiatric problems and was required to take anti-psychotic medication, which, when properly administered, allowed him to be reasonably well-controlled; absent medication, he experienced episodes of violence.
 
 
 3
 On February 7, 1984, Haynes was transferred from his regular cell to the infirmary. According to the district judge, during the afternoon of February 9, 1984, "he began to act out, doing injury to himself and disrupting the activities of others." Prison officials ascertained that he needed medication that no one at the scene was authorized to administer.
 
 
 4
 One official, Lieutenant Stephenson, decided that Haynes should be moved from the infirmary to the strip cell, and enlisted the help of several officers. Over twelve officers eventually congregated, and there remains some dispute whether he "charged out," or whether the officers converged upon him. The district court found, nevertheless, that "[t]here is evidence, if believed, that while Haynes was shackled and on the floor, he was beaten with clubs about the head and body, taken to the strip cell, fatally injured and left unattended to die." That evidence includes deposition testimony indicating that, after Haynes was shackled and restrained, the officers beat him; that they continued to beat him while they dragged him to the strip cell; and that they beat him as he lay in a subdued condition in the strip cell. It was while in the strip cell that another officer allegedly placed his foot on Haynes' neck, applied his body weight, and inflicted the blow that led to his death. A member of the nursing staff eventually requested permission to administer medical treatment to Haynes, but she was too late and he was dead upon arrival at a local hospital.
 
 
 5
 Haynes' mother, as the administratrix of his estate, filed a complaint in the district court against various prison personnel in both their individual and official capacities. That complaint alleged a claim pursuant to 42 U.S.C. Sec. 1983 for infliction of cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. It also alleged both negligent and intentional torts as well as wrongful death under state-based theories of liability.[1]
 
 
 6
 Defendants moved for summary judgment claiming immunity from both the federal and state claims. In an order dated April 3, 1987, the district judge dismissed the state claims sounding in negligence and gross negligence finding a qualified immunity under Ohio law; however, he denied summary judgment on the claim of immunity from the section 1983 claim. Also in that order, he refused to accept pendent jurisdiction over the remaining state-based claim, a position he reversed upon reconsideration. 704 F.Supp. 788.
 
 II.
 
 7
 Defendants ask us to reverse the district court's denial of their motions for summary judgment seeking immunity from plaintiff's section 1983 claim. An appeal from such a decision is an immediately appealable collateral order. Kennedy v. City of Cleveland, 797 F.2d 297, 299-300 (6th Cir.1986), cert. denied sub nom. Hanton v. Kennedy, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).
 
 
 8
 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[T]he right the official is alleged to have violated must have been 'clearly established' " in a particularized sense, Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. For that reason
 
 
 9
 [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.
 
 
 10
 Id. at 639, 107 S.Ct. at 3038 (citations omitted).
 
 
 11
 Defendants concede that, at the time of Haynes' death, the Eighth Amendment prohibited the use of excessive force upon a prisoner. They suggest, however, that there was no clearly established standard by which to measure whether they used excessive force, until 1986 when the Supreme Court announced its opinion in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). There, the Court adopted guidelines to assist in determining whether the use of force is excessive, requiring an evaluation of the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Id. at 320-21, 106 S.Ct. at 1084-85 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).
 
 
 12
 There is no merit to defendants' argument that they are entitled to a qualified immunity from plaintiff's section 1983 claim because the actions occurred prior to Whitley. At the time of Haynes' death, it was clearly established that the unnecessary and wanton infliction of pain constituted cruel and unusual punishment forbidden by the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977). The contours of that right were sufficiently clear that a reasonable person would have understood in 1984 that, in the words of the district judge, "[b]eating a prisoner to near death and leaving him to die violates the Eighth Amendment." Accordingly, he quite properly denied defendants summary judgment on the issue of qualified immunity.
 
 III.
 
 13
 The more difficult issue relates to defendants' claim of immunity regarding plaintiff's wrongful death cause of action. The first concern is whether the issue is properly before us, since there has been no final judgment appealable under 28 U.S.C. Sec. 1291, and there has been no certification of an interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). Whether the issues raised fit within the "collateral order" exception to the final judgment rule, will depend upon the nature of immunity granted by the State of Ohio to its employees.
 
 
 14
 If the issue sought to be reviewed under the collateral order doctrine relates to a claim of immunity from suit, an order denying that immunity must be reviewed before the proceedings terminate lest the purpose for the immunity be lost. Mitchell v. Forsyth, 472 U.S. 511, 525-26, 105 S.Ct. 2806, 2814-16, 86 L.Ed.2d 411 (1985). After final judgment, it is too late to conclude that a party should not have been subjected to trial. In contrast, a claim of immunity from liability, like a challenge to jurisdiction, is effectively reviewable after a final order and does not fit within the collateral order exception. See, e.g., Marrical v. Detroit News, Inc., 805 F.2d 169, 172 (6th Cir.1986) (denial of a claim to immunity from liability is not an immediately appealable collateral order); Lauro Lines S.R.L. v. Chasser, --- U.S. ----, 109 S.Ct. 1976, 1979, 104 L.Ed.2d 548 (1989) (challenges to jurisdiction do not present immediately appealable collateral issues).
 
 
 15
 Thus, when faced with a claim of immunity to a pendent state claim, federal courts look to the appropriate state law to ascertain the nature of the immunity given. See Marrical, 805 F.2d at 172. In Ohio, it appears that state employees enjoy immunity from suit.
 
 
 16
 Civil immunity is granted to officers and employees of the State of Ohio by virtue of section 9.86 of the Ohio Revised Code:
 
 
 17
 Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
 
 
 18
 Ohio Rev.Code Ann. Sec. 9.86 (Anderson 1984).
 
 
 19
 Addressing the effect of that provision, the Supreme Court of Ohio has noted that "civil actions against state officials alleging damages for misperformance of their ministerial duties may no longer be brought by virtue of [section 9.86]." Scot Lad Foods, Inc. v. Secretary of State, 66 Ohio St.2d 1, 10, 418 N.E.2d 1368, 1374 (1981). Instead, the state has consented to waive its sovereign immunity and be sued in the Court of Claims for the liabilities exempted under section 9.86. Ohio Rev.Code Ann. Sec. 2743.02(A)(1) (Anderson Supp.1988). One Ohio court of appeals has specifically determined that the immunity provided for by section 9.86 is immunity from suit. Zweigart v. Nyquist, Nos. C-860313/C-860429, 1987 WL 10035 (Hamilton County Ct.App., Apr. 22, 1987), appeal dismissed sub nom. Zweigert v. Striker, 36 Ohio St.3d 615, 522 N.E.2d 1086 (1988). Finally, any doubt as to the nature of official immunity in Ohio was removed by a recent statutory amendment:
 
 
 20
 A civil action against a state officer or employee that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to civil immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
 
 
 21
 The filing of a claim against a state officer or employee under this section tolls the running of the applicable statute of limitations until the court of claims determines whether the officer or employee is entitled to civil immunity under section 9.86 of the Revised Code.
 
 
 22
 Ohio Rev.Code Ann. Sec. 2743.02(F) (Anderson Supp.1988) (emphasis added). Under Ohio law, then, state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity. Indeed, there would have been no need to toll the statute of limitations on suits against state employees in their individual capacities if parties were free to bring suit against them in one court and then await a decision regarding immunity from the Court of Claims.[2]
 
 
 23
 There remains some question as to whether the district court actually decided the immunity issue. Its order does not make clear whether defendants' claim of immunity was ruled upon or whether the court merely decided to exercise pendent jurisdiction over the wrongful death claim. Although the district court's exercise of pendent jurisdiction, alone, would not normally present an immediately appealable collateral order, the effect of this order is to subject these officials to suit on the wrongful death claim. Given our conclusion that Ohio provides its officials with an immunity from suit, "the legal and practical value of [that immunity] would be destroyed if it were not vindicated before trial." United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978).
 
 
 24
 However, neither we nor the district court are in a position to determine whether defendants are immune from Haynes' wrongful death claim. Until the Ohio Court of Claims determines that they are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert pendent jurisdiction. A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law. See Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 1469-70, 89 L.Ed. 2079 (1945). Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities. In that regard, the only recognized cause of action lies, initially, against the State of Ohio in the Court of Claims. Ohio Rev.Code Ann. Sec. 2743.02(F) (Anderson Supp.1988). Accordingly, the district court may not assert pendent jurisdiction over plaintiff's wrongful death claim until such time as a cause of action against defendants is recognized under Ohio law.
 
 IV.
 
 25
 For the foregoing reasons, the order of the district court is affirmed in part and reversed in part, and this cause is remanded for further proceedings according to law and consistent with this opinion.
 
 
 
 [1]
 Section 2125.01 of the Ohio Revised Code provides, in part:
 Action for wrongful death.
 When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it aggravated murder, murder, or manslaughter.
 Ohio Rev.Code Ann. Sec. 2125.01 (Anderson Supp.1988).
 
 
 [2]
 Cf. Cooperman v. University Surgical Ass., Inc., 32 Ohio St.3d 191, 513 N.E.2d 288 (1987), decided prior to the October 20, 1987 effective date of Revised Code Sec. 2743.02(F)