131 F.3d 1167
 Rebecca M. CAMERON, Individually and as Administratrix of
the Estate of Connor Cameron, deceased; Gary L.
Cameron, individually and as Next Friend
of Casey Cameron, Plaintiffs-Appellees,
v.
CHILDREN'S HOSPITAL MEDICAL CENTER, et al., Defendants,
Warren Bailey, M.D.; Neil Jobalia, M.D.; University
Surgical Group, Inc., Defendants-Appellants.
 No. 96-3379.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 18, 1997.
Decided Dec. 2, 1997.
 
 Richard M. Hopple (argued and briefed), Beckman, Weil, Shepardson & Faller, Cincinnati, OH, for Defendants-Appellants.
 John H. Metz (argued and briefed), Cincinnati, OH, for Plaintiffs-Appellees.
 Before: RYAN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 OPINION
 RYAN, Circuit Judge.
 
 
 1
 In this diversity medical-malpractice action, defendant-physicians Warren Bailey and Neil Jobalia and defendant University Surgical Group, Inc., appeal from the district court's denial of their motion for summary judgment. They claim that they are employees of the state of Ohio and that therefore, under an Ohio statute, are immune from suit in any court other than the Ohio Court of Claims. The district court held the physicians were not employed by the state with respect to the actions that resulted in this lawsuit, and thus are not immune from suit in the district court. Because the district court's finding is not clearly erroneous as to Bailey and University Surgical Group, we shall affirm the denial of their motion for summary judgment. However, because the court does not appear to have independently analyzed Jobalia's employment status, we shall remand for a determination whether he was acting pursuant to a state contract at the relevant time.
 
 I.
 
 2
 The plaintiffs' decedent son, Connor Cameron, was born with a ventricular septal defect which required surgery to repair. Although there were no reported complications during surgery, Connor never regained consciousness, and the day after the surgery, was pronounced dead. Apparently, he suffered a brain injury as the result of receiving insufficient oxygen. The plaintiffs sued Children's Hospital Medical Center, where the surgery was performed; Bailey, the surgeon; and Jobalia, a resident physician who observed the procedure. The plaintiffs also sued University Surgical Group (USG) apparently because it is Bailey's employer.
 
 
 3
 In the district court, the defendants--Bailey, Jobalia, and USG--moved for summary judgment, claiming they are immune from suit. They argued that the district court, sitting in diversity, must apply Ohio law and that an Ohio statute precludes suit against any state employee unless the Ohio Court of Claims first finds that the employee was acting outside the scope of his employment or that his actions were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. See Ohio Rev.Code Ann. § 2743.02(A)(1). The physicians claim that since they are state employees and the Ohio Court of Claims made no finding that they acted maliciously or outside the scope of their employment, the district court is without jurisdiction to hear the plaintiffs' claims.
 
 
 4
 The district court rejected this reasoning and denied the defendants' motion for summary judgment. The court began its decisional discussion by noting that, "initially," it had to determine whether the defendants were state employees in order to decide whether the plaintiffs' claims could properly be heard outside the Ohio Court of Claims. In a written opinion, the court held that the defendants had "failed to establish that they were giving medical services pursuant to a 'service contract with a department, agency or institution of the state,' " (citation omitted), as required for immunity to attach.
 
 II.
 
 5
 The defendants' argument of error apparently is that the district court was obligated to decline to exercise jurisdiction in the case unless the Ohio Court of Claims first determined that the defendants were not state employees at the time of the alleged malpractice. We disagree.
 
 III.
 A.
 
 6
 Before proceeding with the merits of the defendants' assignment of error, we must first discuss the basis of our own jurisdiction. We have no authority to review the denial of summary judgment when the only reason for such denial is the existence of a genuine issue of material fact. See Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995). Therefore, if the district court had denied the defendants' motion because it found the defendants had failed to demonstrate the absence of any genuine issue of material fact, we would have no authority to entertain this interlocutory appeal. However, it is apparent that the district court did not rule against the defendants because material facts were in dispute, but rather because the court found as a fact, by a preponderance of the evidence, that the defendants were not acting as state employees.
 
 
 7
 We acknowledge that the district court's explanation for its denial of the defendants' motion for summary judgment is somewhat ambiguous. Counsel for the parties disagreed at oral argument whether the court (1) found that there was a jury-submissible factual dispute regarding the defendants' state employment; or (2) found as a preliminary question of fact determinative of its jurisdiction that the defendants were not state employees. Upon careful study of the court's order, we conclude that the trial judge found by a preponderance of the evidence that the defendants were acting as private individuals when they rendered medical services to Connor Cameron. Although the court prefaced its decision with a recitation of the Fed.R.Civ.P. 56(c) summary judgment standard including references to genuine issues of material fact and questions for the jury, it is fairly clear from the decisional part of the court's discussion that it made its own finding of fact. In other words, the court weighed the evidence provided by all parties regarding the defendants' alleged state employment, and ruled that the defendants "failed to establish that they were giving medical services pursuant to a 'service contract with a department, agency or institution of the state.' " Indeed, the court's final statement is unambiguous on this point:
 
 
 8
 Consequently, we find that Dr. Bailey, Dr. Jobalia and the University Surgical Group were not state employees when they provided Becky Cameron with medical services.
 
 
 9
 Obviously, the court misspoke by referencing Becky rather than Connor Cameron. Nowhere, however, does the court state that a genuine factual dispute exists regarding this issue. Indeed, at oral argument, the defendants' counsel conceded that the district court resolved the factual dispute in the plaintiffs' favor. Thus, our review is not precluded by the Johnson v. Jones doctrine.
 
 B.
 
 10
 The significance of this finding by the district court derives from the provisions of Ohio Rev.Code Ann. § 9.86, which provides thatno officer or employee shall be liable in any civil action ... for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
 
 
 11
 Further, a physician is a state "employee" if, at the time the cause of action arises, he is rendering medical services "pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state." Ohio Rev.Code Ann. § 109.36(A). Finally, "the court of claims ... has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." Ohio Rev.Code Ann. § 2743.02(F). Thus, the state of Ohio has indicated a preference that its employees be immune from suit in any court other than the Ohio Court of Claims. If the defendants are state "employees" for purposes of this case, then the plaintiffs must present their claim to the Ohio Court of Claims before proceeding in a court of general jurisdiction.
 
 
 12
 This raises, of course, the question whether a trial court may, upon a motion for summary judgment, make a finding of fact in order to determine its jurisdiction to entertain the lawsuit. We think it may.
 
 C.
 
 13
 It seems to be well settled that whether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case. See Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir.1981); Fireman's Fund Ins. Co. v. Railway Express Agency, Inc., 253 F.2d 780, 784 (6th Cir.1958).
 
 
 14
 "Because at issue ... is the trial court's jurisdiction--its very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."
 
 
 15
 Williamson, 645 F.2d at 412-13 (citation omitted). And when a district court makes preliminary findings of fact in determining its jurisdiction, the findings are reviewable only for clear error. See Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 326 (6th Cir.1990).
 
 
 16
 Examples abound of a district court's authority to make factual findings necessary to the determination of its own jurisdiction. For instance, despite there being a genuine factual dispute, a court may make its own findings pursuant to Fed.R.Civ.P. 12(d) regarding (1) the existence of sufficient minimum contacts to justify in personam jurisdiction over an out-of-state defendant, see CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir.1986); (2) whether a relationship exists whereby a party to a prior suit has "virtually represented" a current party, causing the current party to be precluded from relitigating an identical claim, see Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 43 F.3d 1054, 1070 (6th Cir.1995); (3) whether two parties are domiciled in different states for diversity purposes, see Sligh v. Doe, 596 F.2d 1169, 1170 (4th Cir.1979); (4) whether a party has standing to pursue a claim, see Oles v. Hipp, Inc. (In re Hipp, Inc.), 859 F.2d 374, 375 (5th Cir.1988); or (5) whether venue is proper, see Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc., 106 F.3d 284, 288 (9th Cir.1997), cert. granted, --- U.S. ----, 118 S.Ct. 30, 138 L.Ed.2d 1059 (1997). It is perhaps worth noting that in determining whether issues of this genre should be disposed of preliminarily, a court should weigh the need to test the sufficiency of the defense and the party's interest in having the objection promptly decided versus the expense and delay of a hearing, the difficulty of arriving at a decision, and "the possibility that the issue to be decided on the hearing is so interwoven with the merits of the case that a postponement until trial is desirable." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1373 (2d ed. 1990). As noted by the First Circuit,
 
 
 17
 Rule 12(d)[, which allows issues to be heard and determined by the court before trial,] is perhaps too infrequently invoked and too often overlooked. In a proper case, it can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues.
 
 
 18
 Rivera-Gomez v. de Castro, 900 F.2d 1, 2 (1st Cir.1990); see Robin Prods. Co. v. Tomecek, 465 F.2d 1193, 1196 (6th Cir.1972).
 
 
 19
 Whether the defendants were acting in the capacity of state employees is just such a threshold issue. And Haynes v. Marshall, 887 F.2d 700 (6th Cir.1989), is not authority to the contrary. In Haynes, prison officials and law enforcement personnel were sued under a state-law wrongful-death theory for allegedly beating to death a prisoner. Id. at 702. Although this court held that the district court could not exercise jurisdiction over the claim until the Ohio Court of Claims had found that the defendants were amenable to suit, there was no question in Haynes that the defendants were state employees. Id. at 705. Thus, Haynes is of no assistance in deciding whether a district court may make a factual finding regarding a defendant's state-employment status in order to determine its own jurisdiction.
 
 
 20
 Here, the district court had nominal subject-matter jurisdiction by virtue of the parties' diversity of citizenship and allegations that met the then-$50,000 amount-in-controversy minimum. However, the court was obliged to apply Ohio law which, in this case, would divest the court of jurisdiction if the defendants were acting pursuant to a contract of employment with the state. Consequently, the district court should have, and did, make the necessary factual preliminary determination whether the defendants were state employees in order to decide whether the court had jurisdiction over the controversy.
 
 
 21
 Moreover, trying this issue to a jury could create a procedural nightmare. If a federal jury found the defendants to be state employees, not only would Ohio's immunity policy be violated, the jury's finding would preclude its authority to render a verdict on the merits. The case would then have to proceed in the Ohio Court of Claims. If the Court of Claims found the defendants acted maliciously, recklessly, or outside the scope of their employment, the case would move to yet another Ohio state court or back to the United States District Court. This third court would proceed to trial and finally enter a judgment on the jury's verdict regarding the defendants' liability for malpractice.
 
 
 22
 The reasons this issue is not for a jury to decide substantially overlap with the reasons juries do not determine whether a defendant has sufficient contacts with a jurisdiction, whether res judicata bars a plaintiff's suit, whether a party is domiciled in a particular state, or whether a plaintiff has sustained an injury-in-fact. Obviously, where a preliminary factual finding would have no impact on the merits of a claim, but would facilitate the litigation process, a district court should exercise its fact-finding authority. In this case, the fact that the defendants were not acting pursuant to a state contract is certainly separate and distinct from the merits of the plaintiffs' claims. The court did not mention, let alone decide, whether the defendants were negligent.
 
 D.
 
 23
 Thus, we are left with the question whether the district court's finding was clearly erroneous. We note that, although defendant Jobalia is also an appellant, the appellants' brief is dedicated primarily to challenging the district court's ruling vis-a-vis defendant Bailey. This is hardly surprising, in light of the fact that the district court offered no explanation of its finding that Jobalia was not a state employee--leaving him with little to contest. We cannot determine whether this finding was clearly erroneous without the benefit of knowing on what evidence the district court relied in reaching its conclusion. In fact, although the record before us is spare, what little evidence there is indicates that Jobalia was an employee of the University of Cincinnati, a state institution. Thus, on remand, the district court must revisit its conclusion regarding Jobalia's status. Regardless of its ultimate finding, the court's ruling as to this defendant should be supported with references to record evidence.
 
 
 24
 Defendant Bailey presents two arguments that the district court clearly erred. First, he contends that all of his pay, not just the small portion found by the district court, comes from the state. He argues that he is a member of a state university--the University of Cincinnati College of Medicine--and that USG is also part of the University of Cincinnati. Thus, he alleges, any services rendered by him and billed through USG are services rendered pursuant to a state contract, and any income paid to him by USG are payments by the state of Ohio. Bailey relies on the affidavit of the Dean of the College of Medicine for these propositions.
 
 
 25
 However, this affidavit fails to establish a critical link in Bailey's case. Namely, it does not demonstrate that USG is a state entity, rather than a private entity merely "approved" by the College of Medicine. In fact, the affidavit acknowledges that USG is a corporation organized under the laws of Ohio. There is no evidence that USG was incorporated by the University of Cincinnati. USG's Articles of Incorporation and its regulations do not mention the state of Ohio or the University of Cincinnati. And there is no evidence that Bailey or USG were paid any sum by the University of Cincinnati for their services to Connor Cameron in addition to what they would have received from the state had they not rendered these services. Although the affidavit does state that Bailey was "required" to render services as a faculty member of the University, this conclusory allegation is insufficient to rebut the finding made by the district court that the defendants Bailey and USG were not acting pursuant to a contract with the state when Bailey treated Connor Cameron. The medical bills make no reference to the University of Cincinnati, and in the absence of substantial evidence to the contrary, we cannot conclude that the district court clearly erred in this respect.
 
 
 26
 Second, Bailey maintains that, even if he receives only a small portion of his pay from the state, he is still a state employee, and the only question is whether he was acting within the scope of his employment. According to the defendant, he is like the governor, who is no less an employee of the state when in Japan soliciting business for Ohio. This argument, too, fails. Presumably, the governor has only one employer, and the nature of his position requires that he be "on the job" at all times.
 
 
 27
 A more apt analogy is to a state police officer who moonlights as a private security guard. While he is acting as a security guard, he is clearly not a state employee. When acting as a police officer, he clearly is a state employee, but even then may engage in activities that are considered outside the scope of his employment. Although the Ohio Court of Claims has jurisdiction over whether the officer-guard was acting within the scope of his employment if he is sued for an action while being paid as a police officer, any court that otherwise has jurisdiction may determine whether he was being paid as a police officer or as a private guard during the relevant period. See Sanquily v. Court of Common Pleas, 60 Ohio St.3d 78, 573 N.E.2d 606, 607-08 (1991). As the district court noted, a person who receives one dollar from the state cannot thereafter be a "state employee" for all immunity purposes. Any other result would deprive the district court of the authority to determine its own jurisdiction when a defendant claims state employment.
 
 IV.
 
 28
 For the foregoing reasons, the district court's judgment is AFFIRMED as it applies to defendants Bailey and USG, and REVERSED as to defendant Jobalia. The case is REMANDED for further proceedings.