David E. GROOMS, et al., Plaintiffs,

v.

Colonel Kenneth B. MARSHALL, et al., Defendants.

No. 99CV671.

United States District Court, S.D. Ohio, Eastern Division.

March 20, 2001.

Oasis Corp., William Darrell Lunsford, Geoffrey Parker Damon, Damon Law Office, Cincinnati, OH, for Plaintiffs.

Kenneth B. Marshall, Tomi L Dorris, Asst. Atty. Gen., Columbus, OH, for Defendants.

## OPINION AND ORDER

MARBLEY, District Judge.

This matter is before the Court on the Motion for Summary Judgment Filed on Behalf of Defendants Marshall, Hudson, Jagers, Freeman, May, Reitz, Brink, Gibson, and Vander Wissel. The case is in federal court on the basis of federal question jurisdiction. The action stems from the questioning of Plaintiffs by two Defendant police officers, and the subsequent indictment of Plaintiffs.

Plaintiffs David E. Grooms and William Darrell Lunsford bring suit against Colonel Kenneth B. Marshall, Sergeant H.W. Hudson, III, Trooper J.S. Jagers, Captain Forrest Freeman, Lieutenant Jeffrey A. May, Major R. Rucker, Captain A.A. Reitz, Sergeant J.D. Brink, Staff Lieutenant Dan Gibson and Sergeant R. Vander Wissel, exclusively in their individual capacities,[1] under 42 U.S.C. § 1983, 42

---

1. Each Defendant was, at all times relevant to this lawsuit, an officer of the Ohio State High-way Patrol.

U.S.C. § 1985(3) and two Ohio common-law causes of action: false arrest and malicious prosecution. Proceeding under § 1983, Plaintiffs allege: violations of their right to be free from unreasonable searches and seizures, in contravention of the Fourth Amendment; violations of their Fifth Amendment right not to be compelled to incriminate themselves; violations of their Sixth Amendment right to counsel; violations of their right to be free from unfounded criminal charges, in contravention of the Due Process Clauses of the Fifth and Fourteenth Amendments; and violations of their Fifth and Fourteenth Amendment right to equal protection. Under § 1985(3), they allege that all named Defendants conspired to deprive them of these constitutional rights. Plaintiffs seek compensatory damages, attorneys' fees, costs, punitive damages and such further relief as this Court deems just. All Defendants seek summary judgment on all claims.

For the following reasons, the Court **DISMISSES** Plaintiffs' state law claims and **GRANTS** the remainder of Defendants' Motion for Summary Judgment, except for the portion of the Motion seeking Summary Judgment on Plaintiffs' Fourth Amendment-based § 1983 claims brought against Defendants Jagers and Hudson, which the Court **DENIES.**

## I. FACTS

Because the matter before the Court for consideration is Defendants' Motion for Summary Judgment, the Court will present the facts in the light most favorable to Plaintiffs.

On March 13, 1997, information surfaced that several Ohio State Highway Patrol ("OSHP") employees working in the Jackson Salvage Inspection Facility ("Jackson Facility") were accepting bribes and gratuities from salvage dealers in exchange for favorable scheduling appointments. In response, OSHP launched an investigation, targeting the OSHP employees suspected of criminal wrongdoing.

During the course of the investigation, OSHP investigators interviewed thirty-seven individuals, including Plaintiffs Grooms and Lunsford, both of whom were regular customers of the Jackson Facility. Each Plaintiff was interviewed once—Grooms by both Jagers and Hudson on April 11, 1997, beginning at 10:30 a.m., and Lunsford by Jagers on April 16, 1997, beginning at 8:20 a.m. The interviews took place in the OSHP office within the Jackson Facility[2] and lasted an indeterminate length of time. Neither Plaintiff was Mirandized. Investigators also reviewed Jackson Facility records and, from March 24, 1997 until April 9, 1997, an OSHP video camera was installed in the Jackson Facility to record the activity there.[3]

Based upon this investigation, OSHP concluded that several OSHP employees were accepting food and other items of value in exchange for favorable scheduling appointments. This information was conveyed to Jackson County Prosecutor Mark Ochsenbein. Ochsenbein presented the information to the Jackson County Grand Jury on October 21 and 22, 1997 and November 6, 1997. Defendants Hudson and Jagers, and Plaintiffs Grooms and Lunsford all testified before the Grand Jury.

---

**2.** Each Plaintiff was at the Jackson Facility of his own accord prior to being interviewed. Neither, however, was already in the OSHP office. There is nothing in the record to indicate whether the interviews were requested or required.

**3.** On April 9, 1997, the video camera was discovered and removed by OSHP officers; Plaintiff Grooms held the ladder for the officer removing the video camera.

Plaintiffs appeared before the Grand Jury pursuant to subpoenas.

On November 21, 1997, the Jackson County Grand Jury indicted several OSHP employees. The grand jury also indicted Plaintiff Grooms on eight counts of soliciting improper compensation, in violation of Ohio Revised Code section 2921.43, and three counts of perjury, in violation of Ohio Revised Code section 2921.11. Plaintiff Lunsford was indicted on five counts of soliciting improper compensation, in violation of Ohio Revised Code section 2921.43. On February 25, 1998, Prosecutor Ochsenbein *nolle prossed* the Lunsford matter; on April 17, 1998, he did the same in the Grooms case.

On April 9, 1999, Plaintiff Grooms brought the instant action in the United States District Court for the Southern District of Ohio.[4] On July 1, 1999, Plaintiff Grooms filed a Motion for Leave to add an additional plaintiff (Plaintiff Lunsford) and to amend the Complaint. The Court granted the Motion on September 7, 1999; the Amended Complaint was filed on September 16, 1999. On October 27, 2000, Plaintiffs filed their Second Amended Complaint. On November 30, 2000, Defendants filed the instant Motion for Summary Judgment, which became ripe on December 21, 2000.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genu-

ine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993) (citation omitted). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evi-

---

4. The Complaint was originally filed in the Western Division; it was transferred to the Eastern Division on a Motion for Change of Venue.

dence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *see also Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## III. ANALYSIS

### A. State Law Claims

██ Plaintiffs here have brought claims for false arrest and malicious prosecution under Ohio law. It is undisputed that these state law claims arise out of the same set of operative facts as do Plaintiffs' federal claims. Defendants argue, however, that they are immune from suit based on Ohio tort law unless and until the Ohio Court of Claims rules otherwise.

██ This Court concludes that it lacks jurisdiction over Plaintiffs' claims for false arrest and malicious prosecution. It is established that "when faced with a claim of immunity to a pendent state claim, federal courts look to the appropriate state law to ascertain the nature of the immunity given." *Haynes v. Marshall,* 887 F.2d 700, 704 (6th Cir.1989) (citing *Marrical v. Detroit News, Inc.,* 805 F.2d 169, 172 (6th Cir.1986)). In Ohio, state employees enjoy immunity from suit, rather than merely from liability. *Id.* The relevant subsection of the Ohio Revised Code provides:

A civil action against an officer or employee, . . . that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal

immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.

OHIO REV.CODE § 2743.02(F). Section 9.86 of the Ohio Revised Code, in part, further provides:

Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

OHIO REV.CODE § 9.86. State employees, therefore, may not be sued in their individual capacities for claims arising under Ohio law until the Ohio Court of Claims determines that they are not entitled to immunity. As the *Haynes* Court noted:

Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.

*Haynes,* 887 F.2d at 705; *see also Powell v. Morris,* 184 F.R.D. 591, 597 (S.D.Ohio 1998).[5] Plaintiffs' claims for false arrest and malicious prosecution are therefore

---

**5.** Ohio Revised Code §§ 9.86 and 2743.02 do not apply to claims brought under § 1983.

*Conley v. Shearer,* 64 Ohio St.3d 284, 595 N.E.2d 862 (1992).

**DISMISSED,** pursuant to Federal Rule of Civil Procedure 12(h)(3).[6]

### B. Section 1985(3)

■ Under 42 U.S.C. § 1985(3), Plaintiffs allege that all named Defendants in this action conspired to deprive Plaintiffs of their constitutional rights. In support of this allegation, Plaintiffs assert that Hudson's deposition testimony conceding that Freeman, Gibson, Vander Wissel, Jagers and Hudson met with Prosecutor Ochsenbein "to discuss the investigation"[7] is enough to raise a genuine issue of material fact as to a conspiracy by Defendants to deprive Plaintiffs of their constitutional rights.

■ It is well-settled that a "conclusory allegation of conspiracy is insufficient to state a § 1985 claim." *Shepherd v. Veterans Admin., Dep't of Veterans Affairs,* 1993 WL 524290, at *2 (6th Cir. Dec. 17, 1993); *see also Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir.1987); *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir.1984). In the matter *sub judice,* Plaintiffs have adduced evidence to show that a number of Defendants met to discuss an ongoing investigation, but have produced not even a scintilla of evidence tending to show that Defendants conspired to deprive Plaintiffs of their constitutional rights. Defendants' Motion for Summary Judgment, therefore, is **GRANTED** with respect to Plaintiffs' § 1985(3) claims.

### C. Section 1983

Plaintiffs' § 1983 allegations include: violations of their right to be free from unreasonable searches and seizures, in contravention of the Fourth Amendment; violations of their Fifth Amendment right not to be compelled to incriminate themselves; violations of their Sixth Amendment right to counsel; violations of their right to be free from unfounded criminal charges, in contravention of the Due Process Clauses of the Fifth and Fourteenth Amendments; and violations of their Fifth and Fourteenth Amendment right to equal protection. Plaintiffs' claims against Hudson and Jagers are based upon actions taken by those two officers; their claims against Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel are based upon the "tacit approval" of those officers of the actions of Hudson and Jagers.

### 1. Claims Against Defendants Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel

■ Defendants argue that Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel are entitled to summary judgment because Plaintiffs have failed to adduce any evidence tending to show that these Defendants were involved in or encouraged any of the alleged constitutional violations of which Plaintiffs complain. Plaintiffs counter that Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel are subject to liability because they stood idly by while Hudson and Jagers violated Plaintiffs' constitutional rights.

■ The Sixth Circuit has clearly established that a supervisory officer "cannot be held liable under § 1983 for the constitutional torts of those he supervises unless it is shown 'that the supervisor encouraged

---

6. FED.R.CIV.P. 12(h)(3) dictates: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Id.*

7. With respect to that meeting, Hudson stated: "I don't recall any specific conversation about the customers at all .... our employees were ... the focus.... I don't believe [the customers were] even discussed."

the specific incident of misconduct or in some other way directly participated in it.'" *Searcy v. City of Dayton,* 38 F.3d 282, 287 (6th Cir.1994) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984)). To survive a motion for summary judgment, "[a]t a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982). Plaintiffs here have adduced evidence of a discussion of a continuing investigation, but no evidence that tends to show the authorization, approval, or knowing acquiescence of the supervisory Defendants to any constitutional violations allegedly visited upon Plaintiffs. Furthermore, even if Plaintiffs had established that Defendants Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel were aware of the alleged constitutional violations—which in itself would be quite a stretch for the Court to find, given the state of the record—and did nothing to stop them, Plaintiffs' § 1983 claims against the supervisory Defendants still would not survive summary judgment. *See Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988) (holding that liability may not be imposed on supervisory personnel under § 1983 where, "[a]t best, [the plaintiff] has merely claimed that the appellants were aware of alleged [violation], but did not take appropriate action.").

Here, Plaintiffs have adduced no evidence from which a reasonable inference could be drawn that Defendants Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel "at least implicitly authorized, approved, or knowingly acquiesced" in the allegedly unconstitutional conduct of Hudson and Jagers. *Hays,* 668 F.2d at 874.

Summary Judgment is thus **GRANTED** to Defendants Marshall, Freeman, May, Rucker, Reitz, Brink, Gibson and Vander Wissel on Plaintiffs' § 1983 claims. The remainder of this opinion, therefore, addresses the Plaintiffs' § 1983 claims with respect to Sergeant H.W. Hudson, III and Trooper J.S. Jagers only.

### 2. Fourth Amendment Unreasonable Seizure Claims

■ Plaintiffs allege that their interrogations at the hands of Hudson and Jagers amounted to violations of their Fourth Amendment right to be free from unreasonable seizures. Defendants respond that the interviews were voluntary and non-custodial, and thus did not implicate Fourth Amendment protections. Defendants further argue that they are entitled to qualified immunity, even if Plaintiffs were seized.

The key inquiry with respect to this claim is whether seizures, as contemplated by the Fourth Amendment, occurred when Grooms and/or Lunsford were interviewed by Defendants. In evaluating such a question, the Supreme Court has noted: "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), Justice Stewart provided some additional elucidation: "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554, 100

S.Ct. 1870.[8] Thus, the determination in any case of whether a seizure in fact occurred is fact-intensive.

In the present matter, there is simply not enough evidence in the record for the Court to apprehend "all of the circumstances surrounding the incident[s]." What is undisputed is that each Plaintiff was interviewed once—Grooms by both Jagers and Hudson on April 11, 1997, beginning at 10:30 a.m., and Lunsford by Jagers on April 16, 1997, beginning at 8:20 a.m. Each was interviewed in the OSHP office within the Jackson Facility[9] for an indeterminate length of time. Neither Plaintiff was physically restrained or told that he was under arrest, and each was allowed to leave following the interview. As defense counsel conceded at oral argument, though, neither Plaintiff was told he was free to leave the interrogation at any time. Jagers testified in his deposition that the questioning of Grooms "wasn't a very long interview." Also, Lunsford noted in his deposition: "I know I had no reason to feel afraid, but I was scared to death." With respect to the origins of the interviews, the record is silent as to whether the interrogations were requested or required. The Court is also unable at this juncture to ascertain the tone or manner of Defendants' questioning of Plaintiffs, how far away the OSHP office was from Plaintiffs when they were invited to join Defendants there, or how that office was physically appointed-all factors which could bear on whether "a reasonable person would have believed that he was not

free to leave." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870.

As this issue arises in the context of Defendants' Motion for Summary Judgment, Defendants bear the burden of establishing that, drawing all reasonable inferences from the evidence before the Court in favor of the non-moving party, Plaintiffs were not seized. Given the relatively barren record, it is quite plausible to infer that Plaintiffs were ordered by Defendants to proceed to what was essentially a satellite police station, and once there, were interrogated in such a manner that a reasonable person would have believed he was not free to leave. At the very least, there is a genuine issue of material fact as to whether a reasonable person would have believed that he was free to leave. Thus, granting Defendants' Motion for Summary Judgment on this claim would be inappropriate.

 Defendants argument that they are entitled to qualified immunity with respect to Plaintiffs' Fourth Amendment-based claims also fails. Government officials sued in their individual capacities are entitled to seek qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity extends to individuals performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* A constitutional or statutory right is "clearly established" if "[a] reasonable official would understand that what he is do-

**8.** While only Justice Rehnquist joined this portion of Justice Powell's *Mendenhall* opinion, the four *Mendenhall* dissenters appeared to accept the standard as proper, *id.* at 569–71, 100 S.Ct. 1870, and the three concurring Justices opined that the question need not be reached. *Id.* at 560–66, 100 S.Ct. 1870. In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct.

1319, 75 L.Ed.2d 229 (1983), a four-Justice plurality endorsed the *Mendenhall* standard, as did Justice Blackmun in his dissent. *Id.*

**9.** Each Plaintiff was at the Jackson Facility of his own accord prior to being interviewed. Neither, however, was already in the OSHP office.

ing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). While it is beyond debate that an individual's general right to be free from unreasonable seizures is clearly established, whether a reasonable official would have understood that what Hudson and/or Jagers were doing in this specific case violated that right is a fact-intensive question. On the record before the Court, it is not possible to determine whether a reasonable police officer would have understood that Grooms and/or Lunsford had been seized. The Court is therefore not able to grant Defendants qualified immunity at this juncture.

In sum, because there is no way for the Court to determine whether the interrogations of Plaintiffs constituted seizures as contemplated by the Fourth Amendment, the Court **DENIES** summary judgment with respect to Plaintiffs' § 1983 claims based on alleged violations of their Fourth Amendment rights.

### 3. Fifth Amendment Self-Incrimination Claims

■ Read liberally, Plaintiffs' Complaint asserts: Defendants intended to compel Plaintiffs to make self-incriminating statements by subjecting Plaintiffs to coercive custodial interrogations without informing Plaintiffs of their Miranda rights; Defendants accomplished this goal through their planned means; and Plaintiffs' coerced self-incriminating statements were used against them in the Grand Jury proceeding which resulted in their indictments. Plaintiffs thus allege that their Fifth Amendment right to be free from compulsory self-incrimination was violated, and seek redress under § 1983. Defendants respond that because Plaintiffs were not under arrest when they were interrogated, they had no right to receive Miranda warnings and their Fifth Amendment rights could not have been violated.

Though, as explained in subpart III.C.2, the record presently before the Court is insufficient to support a ruling as a matter of law that Plaintiffs were not subjected to custodial interrogations, Plaintiffs' Fifth Amendment-based § 1983 claims must nonetheless fail. The relevant language of the Fifth Amendment guarantees: "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. While the Sixth Circuit has not specifically addressed the issue, the Supreme Court has explained in dicta that this protection can be breached only by the introduction *at trial* of an illegally-obtained statement: "The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." *United States v. Verdugo–Urquidez*, 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (citations omitted).

This dictum has not been strictly followed in all circuits. In *Weaver v. Brenner*, 40 F.3d 527 (2d Cir.1994), for example, the Second Circuit, in a very well-reasoned opinion, held that the use of a coerced self-incriminating statement in a grand jury proceeding is sufficient to support a § 1983 action based on the Fifth Amendment. Specifically, the court found that "use or derivative use of a compelled statement at *any* criminal proceeding against the declarant violates that person's Fifth Amendment rights; use of the statement at trial is not required." *Id.* at 535. The Ninth Circuit, going one step further, held in *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir.1992) (en banc), that actual use of a coerced statement is not a predicate to sustaining a § 1983 action, finding that "[i]t is irrelevant that Cooper's coerced

statements were never introduced against him at trial. The Task Force's wrongdoing was complete at the moment it forced Cooper to speak." *Id.* at 1237.

In the present case, while it appears that Plaintiffs' allegedly compelled self-incriminating statements were used against them in the grand jury proceeding, they were never introduced against Plaintiffs at trial. Indeed, the indictments against Grooms and Lunsford were *nolle prossed* and neither Plaintiff was ever prosecuted for the offenses for which he was indicted. Thus, in light of the Supreme Court's unequivocal pronouncement in *Verdugo–Urquidez*, Plaintiffs' Fifth Amendment rights, as a matter of law, were not violated.

The Court therefore **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiffs' Fifth Amendment claims.

### 4. Sixth Amendment Right to Counsel Claims

■ Plaintiffs allege that their Sixth Amendment right to counsel was denied when they were interviewed at the Jackson Facility by Hudson and Jagers.

■ With respect to the guarantees of the Sixth Amendment, the Supreme Court has made it unmistakably clear that "the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." *U.S. v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (reversing the Ninth Circuit's "holding that respondents had a Sixth Amendment right to the appointment of counsel during their preindictment segregation."). In the matter *sub judice,* the interrogations of which Plaintiffs complain occurred well before they were indicted. The protections of the Sixth Amendment they now seek to enforce, therefore, had not yet attached. Defendants' Motion for Summary Judgment is

thus **GRANTED** with respect to Plaintiffs' Sixth Amendment claims.

### 5. Procedural Due Process Claims

■ Plaintiffs claim that their right to procedural due process was violated when they were deprived "of their respective liberty interests in remaining free from unfounded criminal charges."

■ Analysis of a procedural due process claim involves a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State," *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citing *Board of Regents of State Colls. v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* In the matter *sub judice,* Plaintiffs fail to clear either hurdle.

■ Plaintiffs contend that their indictments have tarnished their reputations and, thus, diminished their respective employment prospects. As the Sixth Circuit has noted, however, "[i]njury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment." *Mertik v. Blalock,* 983 F.2d 1353, 1362 (6th Cir.1993) (citing *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). While keeping one's reputation untarnished by false charges can serve as a protected liberty interest when it is coupled with the loss of a government right, benefit or entitlement, *Christophel v. Kukulinsky,* 61 F.3d 479, 486 n. 4 (6th Cir. 1995), the only losses apart from reputation claimed by Plaintiffs here-increased professional difficulties in the private sector-are neither losses inflicted upon them directly by the state nor separate from and in addition to their sullied reputations;

rather, they are the natural consequences of such tarnished reputations. Plaintiffs fail to support their allegations, therefore, that they have been deprived of protected liberty interests.

■ Further, even if Plaintiffs had been deprived of protected liberty interests, the formal charges of which Grooms and Lunsford complain arose from a grand jury indictment. An indictment by a grand jury has long been regarded as the epitome of "Due Process of Law." *See, e.g., Hurtado v. People of Cal.,* 110 U.S. 516, 522–23, 4 S.Ct. 111, 28 L.Ed. 232 (1884) (harkening back to Blackstone, Coke and the Magna Carta in holding up the "indictment or presentment of good and lawful men" as the gold standard of due process against which all other procedures are to be compared). With respect to showing that the procedures attendant upon the "deprivations" of which they complain were constitutionally insufficient, therefore, Plaintiffs fail patently.

Summary judgment is thus **GRANTED** to Defendants on Plaintiffs' procedural due process claims.

### 6. Substantive Due Process Claims

The Sixth Circuit has explained that "[d]eprivations of substantive due process can be divided into '(1) deprivations of a particular constitutional guarantee and (2) actions that shock the conscience.'" *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993) (quoting *Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1474 (6th Cir.1993)).

The only specific constitutional guarantee on which Plaintiffs could conceivably rest this claim is their Fourth Amendment right to be free from unreasonable seizures. The Supreme Court has ruled, however, that with respect to an illegal seizure claim, "it is the Fourth Amendment, and not substantive due process,

under which [such a] claim must be judged." *Albright v. Oliver,* 510 U.S. 266, 270, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

■ At oral argument, Plaintiffs' counsel conceded that Defendants have done nothing to "shock the conscience" in this case. The Court agrees. The undisputed facts relevant to a "shocks the conscience" claim, in the light most favorable to Plaintiffs, are these: Hudson and Jagers interrogated Grooms and Lunsford; all four men later testified before the grand jury; the grand jury indicted Grooms and Lunsford; Ochsenbein *nolle prossed* the charges against each Plaintiff. Even drawing all reasonable inferences from these facts in Plaintiffs' favor, they do not even begin to approach the "shocks the conscience" bar.

Summary judgment is therefore **GRANTED** to Defendants on Plaintiffs' substantive due process claims.

### 7. Equal Protection Claims

■ Plaintiffs allege in their Second Amended Complaint that their right to equal protection under the Fifth and Fourteenth Amendments was violated. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires that "all persons similarly situated should be treated alike." *Cutshall v. Sundquist,* 193 F.3d 466, 482 (6th Cir.1999) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). In the present case, Plaintiffs have made no specific allegations and adduced no evidence tending to show that they were in any way treated differently from any similarly-situated individuals.

Summary judgment is thus **GRANTED** to Defendants on Plaintiffs' equal protection claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Plaintiffs' state law claims and **GRANTS** the remainder of Defendants' Motion for Summary Judgment, except for the portion of the Motion seeking Summary Judgment on Plaintiffs' Fourth Amendment-based § 1983 claims brought against Defendants Jagers and Hudson, which the Court **DENIES.**[10]

**IT IS SO ORDERED.**

---

**10.** Grooms's Fourth Amendment claim against Hudson and Jagers remains, as does Lunsford's Fourth Amendment claim against Jagers. Each Plaintiff may recover only for wrongs he personally suffered; neither Plaintiff in this suit has standing to sue for any wrong visited upon the other.